UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VELMA WIMBS, | No. 2:15-cv-0926 AC |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1] For the reasons that follow, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand this matter for further proceedings consistent with this order.

---

[1] SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

## I. PROCEDURAL BACKGROUND

Plaintiff applied for SSI on December 21, 2011. Administrative Record ("AR") 27 (ALJ decision).[2] The disability onset date was alleged to be November 30, 2003. Id. The application was initially disapproved on March 6, 2012. AR 79-91 (Exh. 1A), 92 (Exh. 2A). The application was disapproved on reconsideration on July 26, 2012. AR 92-108 (Exh. 3A), 109 (Exh. 4A).

On July 2, 2013, ALJ Sara A. Gillis presided over the hearing on plaintiff's challenge to the disapprovals. AR 42-78 (transcript). Plaintiff, who was present and testified at the hearing, was represented by attorney Mary Heard at the hearing. Christopher C. Salvo, a vocational expert, and witness Yolanda Pattway also testified at the hearing. On December 6, 2013, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 24-36 (decision), 37-41 (exhibits).

On January 31, 2014, plaintiff appealed the ALJ's decision to the Appeals Council. AR 23. On May 30, 2014, while the ALJ's decision was under review at the Appeals Council, plaintiff submitted additional medical records from Margaret Chang, M.D.. AR 311; see Exh. 17F (AR 544-58). The Appeals Council accepted the submissions, and made them a part of the record. AR 5. On September 18, 2014, the Appeals Council ("AC") denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision and additional exhibits).

Plaintiff filed this action on April 29, 2015. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 3, 9. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 13 (plaintiff's summary judgment motion), 14 (Commissioner's summary judgment motion), 15 (plaintiff's reply).

## II. FACTUAL BACKGROUND

Plaintiff was born on August 20, 1964, and accordingly was 47years old and a "younger

---

[2] The AR is electronically filed at ECF Nos. 12-3 to 12-12 (AR 1 to AR 558). The paper copy is filed with the Clerk of the Court. ECF No. 12.

person," when she filed her application.[3]  AR 34.  Plaintiff got as far as the ninth grade, but did not complete high school (AR 66), and thus has a "limited education."[4]  AR 34.

### III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue , 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the

---

[3] See 20 C.F.R. § 416.963(c) ("Younger person").
[4] See 20 C.F.R. § 416.964(b)(3) ("Limited education").

3

ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Supplemental Security Income is available for every eligible individual who is "disabled." 42 U.S.C. § 1381a.  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. § 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not

disabled.  If not, proceed to step five.

Id., § 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id., § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy."  Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since December 21, 2011, the application date (20 CFR 416.971 *et seq.*).
>
> 2. [Step 2] The claimant has the following severe impairments: decreased far acuity, diabetes mellitus, polysubstance abuse, HIV, Hepatitis C, hypertension, schizoaffective disorder cognitive disorder and borderline intellectual functioning (20 CFR 416.920(c)).
>
> 3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. [Residual Functional Capacity]  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except claimant is limited to occasional far acuity, no work at heights or around dangerous machinery and no climbing of ladders/ropes/scaffolds.
>
> 5. [Step 4] The claimant has no past relevant work (20 CFR 416.965).
>
> 6. [Step 5] The claimant was born on August 20, 1964 and was 47 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. [Step 5, continued] The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. [Step 5, continued] Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CF'R 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 21, 2011, the date the application was filed (20 CFR 416.920(g)).

AR 29-36.

As noted, the ALJ concluded that plaintiff was "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 36.

## VI.  ANALYSIS

Plaintiff argues that ALJ erred in considering her visual impairments.  Specifically, plaintiff argues that the ALJ should have found that she met or equaled Listings ¶ 2.02 ("Loss of central visual acuity"), and that the ALJ did not properly account for plaintiff's visual limitations in the residual functional capacity ("RFC") assessment.[5]

A.  Listings ¶ 2.02

At Step 2, the ALJ found that plaintiff had the following severe impairments, among others: decreased far acuity, diabetes mellitus, HIV and hypertension.  AR 29.  As the ALJ noted, plaintiff alleged that those impairments caused her to have vision limitations.  AR 32 ("[s]he has problems due to her hypertension").  The ALJ went on to find that these impairments "could reasonably be expected to cause the alleged symptoms . . . ."  AR 33.  At Step 3, however, the ALJ found that plaintiff had no impairment that met or equaled the Listings.

Plaintiff argues that this was error because plaintiff met or equaled Listings ¶ 2.02.  That Listings is met or equaled if the plaintiff's vision "in the better eye after best correction is 20/200

---

[5] Plaintiff also complains that the ALJ should not have discredited her testimony that her glasses do not help, and did not properly assess her complaints of fatigue.  Since this matter will be remanded for further proceedings, the court need not address these issues at this time.

1    or less." Listings ¶ 2.02.  However, plaintiff does not argue on appeal that her *best corrected*

2    *vision* was 20/200 or less.  Instead, plaintiff simply repeats throughout her brief, that her vision

3    was 20/200, while avoiding any mention of whether that was a measurement for corrected or

4    uncorrected vision.

5       Nor does plaintiff direct the court's attention to evidence in the record pointing to best

6    corrected vision of 20/200 or worse.  The only evidence mentioned by either side shows that

7    plaintiff's *un*corrected vision was 20/70 on February 23, 2012, and that it had deteriorated to

8    20/200 or worse, by May 29, 2013.  AR 417 (Stanley Rabinowitz, M.D.: 20/70, "uncorrected"),

9    513 & 524 (Dr. Chang: count fingers, "SC [without correction]"), 521 (Dr. Chang: 20/200,

10   "without correction").  The remaining vision findings – all showing 20/200 – do not specify

11   whether the measurement was with or without correction.  AR 469, 472, 475, 526 and 529.

12      Plaintiff did submit an opinion from her treating physician, Dr. Chang, to the Appeals

13   Council, which the Appeals Council accepted and made a part of the administrative record.[6]

14   AR 5.  There, Dr. Chang opines that on May 29, 2013, plaintiff was found to be "legally blind in

15   both eyes."  AR 546.  It is possible that Dr. Chang used the term "legally blind" as a short-hand

16   for saying that plaintiff had 20/200 best correction vision, or worse, in both eyes since that is the

17   statutory definition of blindness.  See 42 U.S.C. § 416(i)(1) ("the term 'blindness' means central

18   visual acuity of 20/200 or less in the better eye with the use of a correcting lens"); see also

19   Listings ¶ 2.02 ("[l]oss of central visual acuity" means the "[r]emaining vision in the better eye

20   after best correction is 20/200 or less").  However, the court does not know that that is what

21   Dr. Chang meant, and plaintiff does not argue that it is.[7]

22      Moreover, although Dr. Chang states that plaintiff was found to be "legally blind" on May

---

[6] "[T]he administrative record includes evidence submitted to and considered by the Appeals Council," and it is evidence "which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012).

[7] In presenting Dr. Chang's opinion to the Appeals Council, plaintiff argued that it showed that plaintiff's "best corrected visual acuity has been 20/200 for some time and is now 20/CF (counting fingers) at one foot." AR 311. However, on appeal to this court, the Commissioner asserts that the 20/200 reading was for uncorrected vision, and plaintiff does not dispute this assertion, apparently abandoning her earlier argument that it represented corrected vision.

29, 2013, she does not identify any clinical findings from that date – or any other date – showing that plaintiff's best corrected vision was 20/200 or worse. To the contrary, the only clinical findings in the record from May 29, 2013, state that plaintiff's *uncorrected* vision was 20/200 or worse. AR 513 ("SC [without correction]"), 521 ("[w]ithout correction").

With no evidence in the record that plaintiff's best corrected vision is 20/200 or worse, plaintiff has not met her burden to show that she meets Listings ¶ 2.02.

B. Plaintiff's Visual Impairment

The ALJ found that the only limitation caused by plaintiff's visual impairment was that she was "limited to occasional far acuity." AR 32. This was the limitation imposed by the State agency reviewing physicians, and was based upon Dr. Rabinowitz's February 2012 clinical findings that plaintiff's uncorrected vision was 20/70. See AR 87 ("Eyes: VA of both eye is 20/70, uncorrected with pinhole"), 104 (same), 417 (Exh. 6F) (Dr. Rabinowitz: "(R), (L) eyes without glasses: 20/70, uncorrectable with pinhole"). The state agency doctors concluded that based upon those clinical findings, plaintiff had a visual limitation of "Far acuity: Limited." AR 87, 104. The State agency doctors gave their opinions in March and July, 2012, and therefore did not have available to them the October 2012 and May 2013 clinical findings or opinions of plaintiff's treating physician, Margaret Chang, M.D.

By adopting the opinions of Dr. Rabinowitz and the State agency physicians, the ALJ necessarily ignored or rejected the contrary opinions of Dr. Chang. However, the opinion of Dr. Chang, plaintiff's treating physician, may not be ignored without explanation.

> Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs.

Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[a]n ALJ may reject the uncontradicted medical opinion of a treating physician only for 'clear and convincing' reasons supported by substantial evidence in the record"). Nor may a treating physician's opinion be rejected or disregarded in favor of another doctor's opinion without specific and legitimate reasons explaining it:

////

> an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, *asserting without explanation that another medical opinion is more persuasive*, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.

Garrison, 759 F.3d at 1012-13 (emphasis added); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) ("[t]he ALJ may not reject the opinion of a treating physician, even if it is contradicted by the opinions of other doctors, without providing 'specific and legitimate reasons' supported by substantial evidence in the record").

Here, Dr. Chang opined that plaintiff's uncorrected vision was 20/200. The ALJ neither accepted this opinion, nor rejected it. Instead, the ALJ's decision states that "Dr. Chang found claimant to [have] . . . mild to moderate vision problems," without mentioning the 20/200 finding, and without explaining how she concluded that Dr. Chang's findings translated to "mild to moderate vision problems." AR 30 (citing Exhs. 14F, 15F). In explaining her residual functional capacity finding, the ALJ states that plaintiff's vision problems were of "mild to moderate severity," again without explaining how she reached that conclusion, or what effect Dr. Chang's findings had on that conclusion. AR 33 (citing Exh. 12F at 7 (AR 474), 13F, 14F).

There are several problems with the decision in this regard. Most notably, the ALJ does not mention Dr. Chang's specific 20/200 finding. Therefore, this court has no way of knowing whether the ALJ accepted the finding or rejected it, or some combination. If the ALJ accepted Dr. Chang's 20/200 finding, then she was obligated to obtain additional medical evidence showing how plaintiff's visual disorder affected her ability to function. Listings ¶ 2.00A(4) ("If your visual disorder does not satisfy the criteria in 2.02 . . . we will request a description of how your visual disorder affects your ability to function"). The ALJ did not do this. Instead, she drew a series of conclusions about plaintiff's limitations, but with no medical evidence in the record to support them.

Specifically, as noted above, the ALJ found that plaintiff's vision problems, and the severity of those problems, were "mild to moderate," citing Exh. 12F, 13F, 14F and 15F, without explanation. AR 30, 33. None of those exhibits indicate that 20/200 vision is indicative of "mild

////

to moderate" vision problems,[8] nor does the ALJ explain how the cited exhibits lead to her "mild to moderate" conclusion. It appears that the ALJ simply misread Dr. Chang's reports and findings, in which she finds that the *conditions that are causing plaintiff's vision problems* are "mild" and "moderate." The ALJ may be misreading those as finding that plaintiff's *vision problems* themselves are "mild" and "moderate." Specifically, Dr. Chang refers to plaintiff's nonproliferative diabetic retinopathy ("NPDR"), as "moderate." AR 469 (Exh. 12F). However, this is not a reference to plaintiff's vision, but rather to the condition – NPDR – that is causing plaintiff's vision problems. Similarly, Dr. Chang circled "Mild" on several forms, but she is again referring to the conditions that are causing plaintiff her vision problems, rather than to the vision itself. See AR 472 (Exh. 12F at 5) ("lipid retinopathy," "Quality: Mild"), 474 (Exh. 12F at 7) ("AMD (age-related macular degeneration)," "Quality / Severity: Mild"), 513 (Exh. 14F at 1) ("NPDR," "Quality: Mild"), 524 (Exh. 15F at 8 [appears to be a duplicate of Exh. 12F at 7]) ("NPDR," "Quality: Mild"). Indeed, it is not clear what Dr. Chang would even have in mind, if she were saying that plaintiff had "mild or moderate" visual acuity of 20/200. If the ALJ relied upon her misreading of Dr. Chang's reports, her conclusions are not supported by substantial evidence.

If, on the other hand, the ALJ rejected Dr. Chang's opinion, then she was obligated to give clear and convincing reasons, or at least specific and legitimate reasons, for doing so. She did not do this either. Instead, the ALJ simply stated that she gave "significant weight" to the contrary opinions of Dr. Rabinowitz and the State agency physicians. AR 34. However, it is error for the ALJ to reject a treating physician's opinion just by "asserting without explanation that another medical opinion is more persuasive." Garrison, 759 F.3d at 1012-13.

The error was not harmless. Dr. Rabinowitz based his opinion on his February 23, 2012 examination of plaintiff, in which he found that plaintiff's vision was 20/70 in both eyes without glasses. AR 417. The agency physicians' reports were also based upon this finding. AR 87

---

[8] Nor could they, since if plaintiff's 20/200 vision turns out to be her best corrected vision, then plaintiff is "blind" under the statute and the Listings.

(Elizabeth Huba, SDM: visual limitation "due to VA [visual acuity] of 20/70 uncorrected with pinhole for both eyes"), 104 (G. Taylor, M.D.: same). However, by the time plaintiff was examined by Dr. Chang eight or more months later, her uncorrected vision had deteriorated to 20/200 or worse ("count fingers"), in both eyes. AR 469 & 472 (October 31, 2012: 20/200 both eyes), 475 (October 17, 2012: same), 513 (May 29, 2013: count fingers, both eyes), 521 (May 29, 2013: 20/200 right eye; count fingers, left eye), 546 ("on 5/29/13 . . . you were found legally blind in both eyes").

The ALJ did not take plaintiff's deteriorating vision into account. Plaintiff – a person living with HIV, diabetic retinopathy and lipid retinopathy – specifically alleged that she experienced deterioration in her vision in March or April 2012 (AR 268 (Exh. 8E)), and this complaint was confirmed by Dr. Chang's findings in October 2012 and May 2013. The ALJ's failure to consider this deterioration was reversible error, since the governing regulations require that the ALJ "request a description" of how the visual disorder affects plaintiff's ability to function. Listings ¶ 2.00A(4).

The only indication that the ALJ took Dr. Chang's opinion into account at all was the puzzling statement that:

> Plaintiff was given a pair of glasses in February 2013 and was advised to follow-up in one year. Therefore, while some of her vision testing in 2013 was impaired, the new glasses will likely improve her vision within the 12 month durational requirement (Exhibit 12F: pg., 7: Exhibit 13F: Exhibit I4F).

AR 33. The ALJ offers no explanation for how she concluded that plaintiff's vision would "likely" improve. It is true that plaintiff was prescribed glasses in February 2013 (AR 515), and it is true that Dr. Chang found that plaintiff's vision was impaired in 2013. However, the ALJ identifies no medical evidence in the record – nor does the court find any – that these glasses improved plaintiff's vision at all, and none that the glasses improved plaintiff's vision to better than 20/200.

C. Remand

Plaintiff asserts that the court should remand this matter to the Commissioner for an award of benefits. ECF No. 15 at 9. However, this is appropriate only if it is clear that plaintiff is, in

11

fact, disabled.  Garrison, 759 F.3d at 1021 (reviewing court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled").  Here, even if Dr. Chang's opinion – that plaintiff has *uncorrected* vision of 20/200 – is credited as true, that does not make plaintiff disabled.  Rather, that is a finding that requires the ALJ to obtain information about how plaintiff's visual impairment affects her ability to function.  See Listings ¶ 2.00A(4).  This matter will therefore be remanded for further proceedings.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 14), is DENIED;

3. This matter is remanded to the Commissioner for further proceedings consistent with this order; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: April 14, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE